MasWbarP

```
1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   UNITED STATES OF AMERICA,

4              v.                        19 Cr. 909 (KPF)

5   MICHAEL BARRETO,

6              Defendant.
                                         Plea
7   ------------------------------x

8                                        New York, N.Y.
                                         October 28, 2022
9                                        10:00 a.m.

10  Before:

11
                    HON. KATHERINE POLK FAILLA,
12
                                         District Judge
13
                         APPEARANCES
14
    DAMIAN WILLIAMS
15       United States Attorney for the
         Southern District of New York
16  BY:  KEDAR S. BHATIA
         Assistant United States Attorney
17
    DAVID E. PATTON
18       Federal Defenders of New York, Inc.
         Attorney for Defendant
19  BY:  ARIEL C. WERNER
         NEIL P. KELLY
20       Assistant Federal Defenders

21
    Also Present:  Rachelle Veasley
22

23

24

25
```

MasWbarP

1             (Case called; appearances noted)

2             THE COURT:  Good morning to each of you.

3             And Mr. Barreto, good morning to you, sir.

4             Can I have an acknowledgment on the record that you're

5    able to hear me?

6             THE DEFENDANT:  Yes.

7             THE COURT:  Thank you, sir.

8             Mr. Kelly, Ms. Werner, should I be directing my

9    questions to one of you in particular?

10            MS. WERNER:  You can direct your questions to me this

11   morning, your Honor.  Thank you.

12            THE COURT:  Thank you very much.

13            Ms. Werner, I've received some materials in connection

14   with today's proceeding.  I want to make sure I have the

15   correct materials.  I have a waiver-of-indictment form that's

16   been signed by several people.  I have a second superseding

17   information, which I understand to actually be an updated

18   version of an earlier document I received this week.  I have

19   received a letter, dated October 25 of 2022, from the United

20   States Attorney's Office to you and several colleagues of the

21   Federal Defenders regarding Mr. Barreto.  And then I also

22   received a printout from the government that was identified for

23   me as the elements of the offense.

24            Ms. Werner, have you received each of these documents

25   today?

MasWbarP

1          MS. WERNER:  Yes, I have, your Honor.

2          THE COURT:  Have you reviewed each of these documents

3    with your client?

4          MS. WERNER:  Yes, your Honor.

5          THE COURT:  Thank you.

6          It is my understanding, and I'll speak to your client

7    in just a moment, that in today's proceeding, your client

8    wishes to waive indictment in order to allow the filing of this

9    second superseding information and then to plead guilty to the

10   charges in the second superseding information.  Is that

11   correct?

12         MS. WERNER:  It is, your Honor.

13         THE COURT:  And are you ready to proceed today?

14         MS. WERNER:  We are.

15         THE COURT:  May I speak with Mr. Barreto.

16         MS. WERNER:  Yes, your Honor.

17         THE COURT:  Thank you.

18         Let's do this, please.  Although I appreciate you both

19   standing, just for audibility reasons, I want to be sure I can

20   hear you and everybody else can hear you.  So I'll ask you to

21   remain seated, both of you, and I'll ask you to make sure that

22   the microphones remain reasonably close to you both so that I

23   can hear you, because being in this courtroom there are often,

24   as I've found, sometimes problems.

25         Mr. Barreto, did you just hear me speak with your

MasWbarP

1   attorney, Ms. Werner, a moment ago?

2           THE DEFENDANT:  Yes.

3           THE COURT:  And what I understand, sir, is that having

4   previously been arraigned on charging instruments and having

5   previously pleaded not guilty, what you'd like to do today is

6   something different.  You'd like to waive your right to be

7   indicted, which would allow me to file a set of different

8   charges against you, and it is your wish to enter a guilty plea

9   to those different charges today.  Is that correct, sir?

10          THE DEFENDANT:  Yes.

11          THE COURT:  Mr. Barreto, before I can accept a guilty

12   plea and before I can permit you to waive indictment, I need to

13   ask you a series of questions.  So what I'd like to do is talk

14   to you now about the purposes that those questions serve.  The

15   first thing that I need to know, sir, is that you're competent.

16   And when I use that term, what I mean is that you can see and

17   hear and understand what is happening in this courtroom and

18   that you can make decisions with your full ability to see,

19   hear, and understand.

20          If I find that you are competent, we'll talk about

21   certain rights that you have.  These are rights with respect to

22   indictment and these are rights with respect to your ability to

23   plead guilty or to go to trial.  I'll also ask you some

24   questions to confirm that you understand the penalties that are

25   associated with these offenses.

MasWbarP

1            The most important thing, Mr. Barreto, is that you

2      understand each of the questions that I am asking you.  If at

3      any time something that I am saying is confusing to you, if at

4      any time you wish to take a break to speak with your attorneys,

5      just let me know.

6            Will you do that, sir?

7            THE DEFENDANT:  Yes.

8            THE COURT:  Are you ready to proceed now?

9            THE DEFENDANT:  Yes.

10           THE COURT:  Ms. Noriega, can I ask you, please, to

11     swear in Mr. Barreto.

12           THE DEPUTY CLERK:  Yes, your Honor.

13           Mr. Barreto, can you please stand and raise your right

14     hand.

15           (Defendant sworn)

16           THE DEPUTY CLERK:  Thank you.  Please state your full

17     name for the record.

18           THE DEFENDANT:  Michael Barreto.

19           THE DEPUTY CLERK:  Thank you.  You may be seated.

20           THE COURT:  Ms. Werner, I thank you in advance for the

21     many times that you'll be adjusting that microphone today and

22     your own.  I do thank you for that, because it's important that

23     I hear everyone.

24           Mr. Barreto, the significance of my placing you under

25     oath is that if you answer any of the questions that I'm about

MasWbarP

```
1    to ask you falsely, you could be prosecuted for a separate

2    offense that's commonly known as perjury.

3              Do you understand that, sir?

4              THE DEFENDANT:  Yes.

5              THE COURT:  Mr. Barreto, how old are you, sir?

6              THE DEFENDANT:  I'm 34.

7              THE COURT:  How far did you go in school, Mr. Barreto?

8              THE DEFENDANT:  Ninth grade.

9              THE COURT:  Did you attend school in the New York area

10   or somewhere else?

11             THE DEFENDANT:  No.  New York.

12             THE COURT:  New York.

13             Sir, have you ever been treated or hospitalized for

14   any form of mental illness?

15             THE DEFENDANT:  Yes.

16             THE COURT:  Was it treatment or hospitalization or

17   both, sir?

18             THE DEFENDANT:  Both.

19             THE COURT:  Let's talk about hospitalization first.

20   Were you hospitalized once or more than once?

21             THE DEFENDANT:  In -- twice.

22             THE COURT:  When was the most recent hospitalization;

23   what year, if you can remember?

24             THE DEFENDANT:  Oh, wow.

25             THE COURT:  Let's try this.  Was it more than five
```

MasWbarP

```
 1   years ago?

 2                THE DEFENDANT:  Yeah.  Yes.

 3                THE COURT:  Was it more than ten years ago?

 4                THE DEFENDANT:  Yeah.

 5                THE COURT:  OK.  More than ten years ago?

 6                THE DEFENDANT:  Yeah.  Yes.

 7                THE COURT:  Let's leave it at that.

 8           When you were hospitalized, did you receive certain

 9   medications?

10                THE DEFENDANT:  Yes.

11                THE COURT:  Do you continue to take those medications

12   today?

13                THE DEFENDANT:  They kind of changed it, but yeah.

14                THE COURT:  Yeah.  Why don't I ask a better question.

15   As a result of any mental health issues that you may have, are

16   you currently taking medications?

17                THE DEFENDANT:  Yes.

18                THE COURT:  Could you please tell me, either by the

19   name of the medication or what it does -- antianxiety,

20   antidepressant -- what types of medications you're taking?

21                THE DEFENDANT:  It's like anxieties and stress and the

22   name of it, I think, is called busbar.

23                THE COURT:  Busbar.

24                THE DEFENDANT:  Yeah.

25                THE COURT:  Yes.  OK.  Is that something you take
```

MasWbarP

```
 1    every day, sir?
 2              THE DEFENDANT:  Twice a day.  Twice a day.
 3              THE COURT:  In addition to that, are you taking any
 4    other medications, sir, for any other mental health issues?
 5              THE DEFENDANT:  I am, but I don't remember.  I --
 6              THE COURT:  That's fine.  Are they also antianxiety
 7    medications or something else?
 8              THE DEFENDANT:  One of them is for panic attacks and I
 9    think anxiety also.
10              THE COURT:  And so each day you take these medications
11    to help you with mental health issues.  Is that correct?
12              THE DEFENDANT:  Yes.  Yes.
13              THE COURT:  And have you taken them this morning, sir?
14              THE DEFENDANT:  No.
15              THE COURT:  Did you take them yesterday?
16              THE DEFENDANT:  Yes.
17              THE COURT:  Is there anything about your taking those
18    medications that gives you any difficulty seeing, hearing, or
19    understanding me this morning?
20              THE DEFENDANT:  No.  No.
21              THE COURT:  No?
22              THE DEFENDANT:  No.
23              THE COURT:  Other than the mental health medications
24    we've just been talking about, are you taking any other
25    medications for any other medical conditions, such as high
```

MasWbarP

1    blood pressure or cholesterol or something like that?

2              THE DEFENDANT:  No.  No.

3              THE COURT:  While you've been detained, have you been

4    able to see anyone, a psychologist or a therapist, to talk

5    about mental health issues?

6              THE DEFENDANT:  I -- I have been trying, but they take

7    long.

8              THE COURT:  Have you been speaking, perhaps, with a

9    social worker from the Federal Defenders?

10             THE DEFENDANT:  Yes, yes.  Definitely, yes.

11             THE COURT:  Of course.  I'm happy to have their

12   assistance.

13             Sir, are you receiving any other medical treatment, or

14   have you recently received any other medical treatment for any

15   other medical issue?

16             (Defendant conferred with counsel)

17             THE DEFENDANT:  Oh, yeah.  My finger.

18             THE COURT:  You hurt your finger, sir?

19             THE DEFENDANT:  Yes.

20             THE COURT:  And when, approximately, did that take

21   place?

22             THE DEFENDANT:  Two weeks ago.

23             THE COURT:  And was the care that you received

24   medicine for the pain, or did you receive stitches or did you

25   receive something else?

MasWbarP

```
1              THE DEFENDANT:  Nothing.

2              THE COURT:  Nothing?

3              THE DEFENDANT:  They didn't give me nothing.

4              THE COURT:  All right.

5         Ms. Werner, would you let me know by the end of this

6  proceeding whether there's a medical attention form you'd like

7  me to complete.

8              MS. WERNER:  Yes, your Honor.  Thank you.

9              THE COURT:  OK.  Yes.  I don't know whether that's a

10 yes, you do need it or a yes, you'll tell me at the end.

11             MS. WERNER:  Your Honor, I'd like to inquire further

12 with Mr. Barreto.  We have been asking for him to get an x-ray,

13 and I'm not certain whether he actually has had that x-ray, but

14 we have inquired several times.

15             THE COURT:  He has not had that x-ray.  He's shaking

16 his head no.

17             (Defendant conferred with counsel)

18             MS. WERNER:  Your Honor, a medical attention form

19 would be very helpful.  I'm looking at his finger.  It is still

20 crooked.  He has one swollen knuckle, and it is something that

21 I have brought to the attention of MDC legal several times.

22             THE COURT:  Yes, we will complete the medical

23 attention form.  Could you please tell me what hand and what

24 finger.

25             MS. WERNER:  It is the pointer finger of his left
```

MasWbarP

1   hand, your Honor.

2            THE COURT:  Left hand.  All right.  Thank you very

3   much.

4            Mr. Barreto, despite any discomfort you may be having

5   with your finger, are you still able to proceed today?  Are you

6   able to see and hear and understand me without difficulty?

7            THE DEFENDANT:  No.  I could continue.

8            THE COURT:  And the "no" means there's no difficulty.

9   Thank you.  No.  I asked a question that could have called for

10  both answers.

11           In the last two days, have you taken any drugs,

12  medicine or pills of any type other than the ones that you

13  outlined for me about five minutes ago?

14           THE DEFENDANT:  Ibuprofen.

15           THE COURT:  Ibuprofen.  OK.  And was that for pain,

16  sir?

17           THE DEFENDANT:  Actually, for pain and for headaches.

18           THE COURT:  Yes, sir.  And anything else other than

19  that?

20           THE DEFENDANT:  No, no.

21           THE COURT:  Does ibuprofen affect your ability to see,

22  hear or understand me this morning?

23           THE DEFENDANT:  No, no, no.

24           THE COURT:  Sir, have you consumed any alcoholic

25  beverages in the past two days?

MasWbarP

1          THE DEFENDANT:  No.

2          THE COURT:  I have to ask the question.

3          Is your mind clear this morning?

4          (Defendant conferred with counsel)

5          THE COURT:  You can say that.

6          THE DEFENDANT:  I'm just --

7          THE COURT:  You're stressed?

8          THE DEFENDANT:  Yeah.  I'm just emotional.  I'm just

9    all over the place.

10          THE COURT:  OK.  And we'll be talking about that, and

11   that's why you take the breaks to speak with your attorneys,

12   and that's why I'm asking you these questions.

13          Mr. Barreto, the question that I have for you is do

14   you want to proceed this morning?

15          THE DEFENDANT:  Yes, yes.

16          THE COURT:  OK.  And is your mind clear enough to

17   permit you to proceed this morning?

18          THE DEFENDANT:  Yes.

19          THE COURT:  Ms. Werner, have you had a sufficient

20   opportunity, you and your colleagues, to discuss this matter

21   with Mr. Barreto?

22          MS. WERNER:  We have, your Honor.

23          THE COURT:  And do you believe he understands the

24   rights that he has and that he would be waiving by waiving

25   indictment or by pleading guilty?

MasWbarP

1           MS. WERNER:  Yes, we do, your Honor.

2           THE COURT:  Do you believe he's capable of

3    understanding the nature of these proceedings this morning?

4           MS. WERNER:  We do.

5           THE COURT:  If your client wishes to waive indictment

6    or if your client wishes to plead guilty, do you believe he is

7    competent to do so?

8           MS. WERNER:  We do.

9           THE COURT:  Mr. Bhatia, do you believe Mr. Barreto is

10   competent to waive indictment or to plead guilty if he wishes

11   to do either or both of those things?

12          MR. BHATIA:  Yes, your Honor.

13          THE COURT:  Thank you.

14          Mr. Barreto, based on our discussions this morning,

15   yours and mine, and that includes both your answers to my

16   questions and my observations of your demeanor here in court,

17   and based as well on the discussions I've just had with your

18   attorney and the attorney for the government, I find that you

19   are competent to proceed to waive indictment if you wish to do

20   so and to enter a plea of guilty if you wish to do so.

21          Mr. Barreto, in connection with this proceeding, I was

22   given a document, and it says in the upper right-hand corner

23   that it is a waiver of indictment.  I'm marking this document

24   as Court Exhibit 1, and I'm holding a copy up right now as I'm

25   speaking to you.  You have a copy of that document in front of

MasWbarP

1    you, sir, is that correct?

2              THE DEFENDANT:  Yes.  Yes.

3              THE COURT:  I'm going to take down my copy.

4              Sir, the document that I have has three signatures on

5    it.  Is that the same with the version of the document that you

6    have?

7              THE DEFENDANT:  Yes.

8              THE COURT:  Is one of those signatures yours?

9              THE DEFENDANT:  Yes.

10             THE COURT:  Did you sign this document this morning,

11   sir?

12             THE DEFENDANT:  Yes.

13             THE COURT:  Did you sign it in the presence of your

14   attorneys?

15             THE DEFENDANT:  Yes.

16             THE COURT:  Before you signed this document, did you

17   read it?

18             THE DEFENDANT:  Yes.

19             THE COURT:  Without giving me the specifics of your

20   communications -- I don't want the details -- did you discuss

21   it with your attorneys?

22             THE DEFENDANT:  Yes.

23             THE COURT:  At the time that you signed this document,

24   did you understand what this document -- what its purpose was?

25             THE DEFENDANT:  Yes.

MasWbarP

1          THE COURT:  Do you understand, sir, that you're under
2     no obligation to waive indictment in this case?
3          THE DEFENDANT:  Yes.
4          THE COURT:  Let me ask the question a little bit
5     differently.  Sir, if you decided not to waive indictment and
6     the government wanted to bring additional charges or different
7     charges than those that they've already brought against you,
8     they would have to go to the grand jury.
9          Do you understand that, sir?
10          THE DEFENDANT:  Yes.
11          THE COURT:  And if they went to the grand jury, the
12     grand jury might decide to return an indictment on those new or
13     different charges, or they might decide not to.
14          Do you understand that?
15          THE DEFENDANT:  Yes.
16          THE COURT:  And so do you understand that by signing
17     this form and by waiving indictment, you're giving up your
18     right to have these additional, these different charges
19     presented to the grand jury?
20          Do you understand that, sir?
21          THE DEFENDANT:  Yes.
22          THE COURT:  I've used the term "grand jury."  When I
23     use that term, do you know what I'm talking about?
24          (Counsel conferred with defendant)
25          THE COURT:  Mr. Barreto, let's do this.  I'm going to

MasWbarP

```
 1    pause for a moment.  I'll ask you to turn to your attorney.
 2    She'll talk to you about what the grand jury is and what
 3    purposes it serves.  I suspect some of these are things you've
 4    talked about already and she's just refreshing your
 5    recollection, and some of these, maybe, are just new to you.
 6    But take the time you need, and I'd like you both to come back
 7    to me when you're ready to continue.
 8              Go ahead.  Have that conversation.  Thank you.
 9              MS. WERNER:  Thank you, your Honor.
10              THE COURT:  Of course.
11              Mr. Barreto, have you had a sufficient time to speak
12    with your attorney about what the grand jury is and what
13    purposes it serves?
14              THE DEFENDANT:  Yes.
15              THE COURT:  Do you have any questions for me about the
16    grand jury, sir?
17              THE DEFENDANT:  No.  No.  No.
18              THE COURT:  Is it your wish, sir, to waive indictment
19    in this case and to allow the filing of an information?
20              THE DEFENDANT:  Yes.
21              THE COURT:  Ms. Werner, have you had a sufficient
22    opportunity to speak with your client about his ability, his
23    right to waive indictment?
24              MS. WERNER:  Yes, your Honor.
25              THE COURT:  And as a result of that, do you believe --
```

MasWbarP

```
 1   well, I'll ask the question from the negative perspective.
 2           Is there any reason why I should not find that your
 3   client has knowingly and voluntarily waived his right to be
 4   indicted by the grand jury?
 5           MS. WERNER:  No, your Honor.
 6           THE COURT:  Mr. Bhatia, same questions.  Any reason I
 7   should not find that Mr. Barreto has knowingly and voluntarily
 8   waived his right to be indicted by the grand jury?
 9           MR. BHATIA:  No, your Honor.
10           THE COURT:  Mr. Barreto, having spoken with you and
11   having spoken to the attorneys in this case, I find that you
12   have knowingly and voluntarily waived your right to be indicted
13   by a grand jury.  I'm allowing the filing of a document that
14   says in the upper right-hand corner second superseding
15   information.
16           Do you have a copy of that, sir.
17           THE DEFENDANT:  Yes.
18           THE COURT:  Have you read this document before, sir?
19           THE DEFENDANT:  Yes.
20           THE COURT:  Without giving me the details of your
21   communications, because I never want those, have you had an
22   opportunity to discuss it with your attorney, these charges?
23           THE DEFENDANT:  Yes.
24           THE COURT:  Would you like me to read this document
25   into the record of this case, or do you waive its public
```

MasWbarP

1    reading?

2              THE WITNESS:  Waive.

3              THE COURT:  Mr. Barreto, it is my understanding that

4    you wish to plead guilty today to all of the charges that are

5    contained in this second superseding information.  Is that

6    correct?

7              THE DEFENDANT:  Yes.

8              THE COURT:  Have you had a sufficient opportunity to

9    speak with your attorneys about these charges to which you

10   intend to plead guilty and any defenses that you may have to

11   these charges?

12             THE DEFENDANT:  Yes.

13             THE COURT:  Without giving me the details, have your

14   attorneys explained to you the consequences of entering a plea

15   of guilty to these charges?

16             THE DEFENDANT:  Yes.

17             THE COURT:  Are you satisfied with your attorneys'

18   representation of you in this matter?

19             THE DEFENDANT:  Yes.

20             THE COURT:  Sir, what I'd like to do now -- I'm going

21   to put the information down for a moment.  I'm going to talk to

22   you about certain rights that you have, and these are rights

23   that you would be waiving if you were to enter a guilty plea in

24   this case.  What I appreciate, Mr. Barreto, is that you've been

25   paying very careful attention to what I've been saying.  I'll

MasWbarP

```
1   ask you to continue doing that and to let me know if at any

2   time you need to take a break.

3           Will you do that, sir?

4           THE DEFENDANT:  Yeah.  I mean yes.

5           THE COURT:  OK.  Thank you, sir.

6           Mr. Barreto, under the Constitution and laws of the

7   United States, you have the right to enter a plea of not guilty

8   to the charges contained in this information.

9           Do you understand that?

10          THE DEFENDANT:  Yes.

11          THE COURT:  If you pleaded not guilty, you would be

12  entitled to a speedy and a public trial on the charges

13  contained in this information.

14          Do you understand that?

15          THE DEFENDANT:  Yes.

16          THE COURT:  At a trial, you would be presumed to be

17  innocent, and the government would be required to prove you

18  guilty by competent evidence beyond a reasonable doubt before

19  you could be found guilty.

20          Do you understand that, sir?

21          THE DEFENDANT:  Yes.

22          THE COURT:  A jury of 12 people would have to agree

23  unanimously that you were guilty of these offenses.  You would

24  not have to prove that you were innocent of these offenses if

25  you were to proceed to trial.
```

MasWbarP

```
 1              Do you understand that, sir?

 2              THE DEFENDANT:  Yes.

 3              THE COURT:  At a trial, and at every stage of your

 4   prosecution, you are entitled to the assistance of an attorney.

 5   If and to the extent that you could not afford an attorney, an

 6   attorney is appointed for you at public expense, free of cost

 7   to you, in order to represent you.

 8              Do you understand that, sir?

 9              THE DEFENDANT:  Yes.

10              THE COURT:  If there were a trial in this case, the

11   witnesses for the government would have to come into court and

12   testify in your presence.  Your attorneys could cross-examine

13   the government's witnesses.  They could object to the

14   government's evidence.  They could offer evidence on your

15   behalf if you wanted them to do so.

16              Do you understand each of those things, sir?

17              THE DEFENDANT:  Yes.

18              THE COURT:  If there were a trial, you would have the

19   right to testify if you wanted to do so, and you would have the

20   right not to testify if you wanted not to do so.  If you

21   decided not to testify, no one, including the jury, could draw

22   any inference or any suggestion of guilt from your decision not

23   to testify.

24              Do you understand that, sir?

25              THE DEFENDANT:  Yes.
```

MasWbarP

1          THE COURT:  Another consequence of entering a guilty

2    plea in this particular manner is that you waive -- or give

3    up -- your right to seek suppression or exclusion of the

4    government's evidence in this case.

5          Are you aware of that, sir?

6          THE DEFENDANT:  Yes.

7          THE COURT:  Have you had a sufficient opportunity to

8    speak with your attorneys about whether there is any basis to

9    seek suppression or exclusion of part or all of the

10   government's evidence against you?

11         THE DEFENDANT:  Yes.

12         THE COURT:  Do you understand, sir, that if you were

13   convicted after a trial, you would have the right to appeal

14   from the jury's verdict?

15         THE DEFENDANT:  Yes.

16         THE COURT:  Do you also understand that even now as

17   we're having this conversation, you can change your mind and

18   enter a plea of not guilty to the charges contained in this

19   information, this second superseding information.

20         Do you understand that, sir?

21         THE DEFENDANT:  Yes.

22         THE COURT:  Mr. Barreto, if you plead guilty and if I

23   accept your guilty plea, you will give up your right to trial

24   and the other rights that I've been discussing with you other

25   than your right to an attorney.  You have the right to an

MasWbarP

```
1    attorney whether you plead guilty or go to trial.  But if you
2    plead guilty and if I accept your guilty plea, there will be no
3    trial.  I will enter a judgment of guilty on the counts in the
4    information, and I will sentence you at a later date based on
5    information that I obtain from you here today, information that
6    I obtain from the United States Probation Office in a document
7    that's called a presentence investigation report, and based on
8    information that I attain from you and your attorneys and the
9    attorneys for the government in connection with sentencing.
10        If you plead guilty and if I accept your guilty plea,
11   there will be no appeal on the issue of whether the government
12   could use the evidence that it has against you.  There would
13   also be no appeal on the issue of whether you, in fact,
14   committed the offenses charged in the information.
15        Do you understand each of those things, sir?
16        THE DEFENDANT:  Yes.
17        THE COURT:  Mr. Barreto, if you plead guilty, there is
18   also a degree to which you will have to give up your right not
19   to incriminate yourself.  What I mean by that, sir, is that I
20   will be asking you questions about what you did, and you will
21   have to admit and acknowledge your guilt of the offenses
22   charged in the information.  And I'm doing that, sir, so that I
23   can satisfy myself that you're pleading guilty because you're,
24   in fact, guilty of these offenses and not for some other
25   reason.
```

MasWbarP

1              So do you understand that to a limited -- well, to a

2      degree, you will have to give up your right not to incriminate

3      yourself in order to plead guilty here today?

4              THE DEFENDANT:  Yes.

5              THE COURT:  Sir, do you understand each of the rights

6      that I've been discussing with you this morning?

7              THE DEFENDANT:  Yes.

8              THE COURT:  Would you like any additional or

9      clarifying information about any of those rights?

10             THE DEFENDANT:  No.  No.

11             THE COURT:  Is it your wish this morning, sir, to give

12     up those rights and to enter a plea of guilty to the charges

13     contained in the second superseding information?

14             THE DEFENDANT:  I --

15             THE COURT:  Let me ask the question again.  I said

16     that very quickly.  Is it your wish today, sir, to give up the

17     rights that we've been discussing and to enter a plea of guilty

18     to the charges contained in the second superseding information?

19             THE DEFENDANT:  Yes.

20             THE COURT:  Thank you, sir.

21             Let's talk then about that information.  Do you have a

22     copy of it in front of you?

23             THE DEFENDANT:  Yes.

24             THE COURT:  Yes.

25             What I see in this information, sir, is that you're

MasWbarP

1    charged in three counts with the offense known as enticement of

2    a minor, in violation of Sections 2422(b) and 2 of Title 18 of

3    the United States Code.  And then in Sections 3, 5, and 6,

4    you're charged with receipt of child pornography, in violation

5    of Sections 2252A(a)(2)(B), (b)(1) and then Section 2, also of

6    Title 18 of the United States Code.

7              Is that what you understand the six charges against

8    you to be, sir?

9              THE DEFENDANT:  Yes.

10             THE COURT:  In anticipation of this proceeding, the

11   government gave to me and to your attorney a document that

12   says -- has your name, and it lists on two pages the elements

13   of the offense.  Your attorney is showing you a copy of that

14   document.

15             Do you see it, sir?

16             THE DEFENDANT:  Yes.

17             THE COURT:  Have you read this document, sir?

18             MS. WERNER:  Your Honor, if I may?

19             THE COURT:  You may.  Ms. Werner, the question that I

20   have for you is -- this is unusual for me and much appreciated

21   that the government has given me in written form the elements.

22   I'd like to know what the defense would like with respect to

23   this part of the Rule 11 plea colloquy.  If you'd like

24   Mr. Bhatia to read them into the record, we can do that.  If

25   you tell me that you've reviewed them and that that would be

MasWbarP

1    unnecessary, I'll speak to you and your client about that.  But

2    tell me what it is you'd like to do.

3              MS. WERNER:  Sure, your Honor.  First, I did want to

4    say, and this may be a minor correction to something I

5    represented earlier, Mr. Barreto has not seen this actual

6    document with the list of elements --

7              THE COURT:  Thank you.

8              MS. WERNER:  -- because it was provided to us after

9    our last meeting yesterday morning at the MDC.  However, we

10   have gone over the elements after having discussed them with

11   the government at length.  So Mr. Barreto is aware of the

12   contents of this document, although he has not reviewed this

13   document particularly.

14             As to how to proceed, I defer to the Court.  We have

15   no problem proceeding based on the representation that we have

16   reviewed the elements at length.  We also have no problem with

17   the government reading the elements into the record.

18             THE COURT:  Mr. Bhatia, for my own convenience and

19   just for belt and suspenders, I'd ask you, please, to place

20   these elements on the record.

21             MR. BHATIA:  I agree, your Honor.  I'm happy to do

22   that.

23             THE COURT:  I thank you.  Please do that.

24             Mr. Barreto, you and I are going to be both paying

25   attention to Mr. Bhatia, the prosecutor.  He's going to outline

MasWbarP

1  for both of us what the elements are of the two charges.  I

2  know they're charged in six counts, but there are two offenses

3  with which you've been charged.  So please give your attention

4  to Mr. Bhatia at this moment.

5          Thank you, sir.

6          MR. BHATIA:  Your Honor, Counts One, Two, and Four

7  charge the crime of enticement, in violation of 18 U.S.C. §

8  2422(b) and 2.  There are four elements to these counts:

9          First, that the defendant used a facility of

10  interstate commerce;

11          Second, the defendant knowingly persuaded or induced

12  or enticed or coerced the victim to engage in sexual activity;

13          Third, the victim was less than 18 years old at the

14  time of the acts alleged in the indictment -- in this case, the

15  information;

16          Fourth, the sexual activity would violate New York

17  State law.

18          As alleged in each of these counts, Counts One, Two,

19  and Four, the sexual activity violated New York Penal Law

20  Section 130.55, titled sexual abuse in the third degree.  The

21  elements of an offense under New York Penal Law Section 130.55

22  are that

23          One, the defendant subjected the victim to sexual

24  contact;

25          Two, without the victim's consent.

MasWbarP

1          Under New York law, a person is deemed incapable of

2  consent when he or she is less than 17 years old.

3          Those are the elements of Counts One, Two, and Four.

4          Counts Three, Five, and Six charge the crime of

5  receipt of child pornography, in violation of 18 U.S.C.

6  Sections 2252A(a)(2)(B), (b)(1), and 2.

7          There are four elements to these crimes:

8          First, that the defendant knowingly received or

9  distributed a visual depiction;

10          Second, that the visual depiction was transported in

11  or affecting interstate or foreign commerce or the visual

12  depiction was produced using materials that had been

13  transported in or affecting interstate or foreign commerce;

14          Third, that the visual depiction was child

15  pornography.

16          "Child pornography" means any visual depiction,

17  including any photograph, film, video, picture, or computer or

18  computer-generated image or picture, whether made or produced

19  by electronic, mechanical, or other means, of sexually explicit

20  conduct where (A) the production of such visual depiction

21  involves the use of a minor engaging in sexually explicit

22  conduct; (B) such visual depiction is a digital image, computer

23  image, or computer-generated image that is, or is

24  indistinguishable from, that of a minor engaging in sexually

25  explicit conduct; or (C) such visual depiction was created,

MasWbarP

```
 1   adapted, or modified to appear that an identifiable minor is
 2   engaging in sexually explicit conduct.
 3          "Sexually explicit conduct" includes actual or
 4   simulated (A) masturbation, or (B) lascivious exhibition of the
 5   anus, genitals, or pubic area of any person.
 6          The fourth element is that the defendant knew of the
 7   sexually explicit nature of the material and that the visual
 8   depiction was of an actual minor engaged in that sexually
 9   explicit conduct.
10          For all six counts in the information, the government
11   would also be required to prove that venue is properly found in
12   the Southern District of New York by a preponderance of the
13   evidence.
14          THE COURT:  I thank you very much.
15          Mr. Barreto, were you able to follow along with the
16   prosecutor as he outlined the elements of the offenses in this
17   case?
18          THE DEFENDANT:  Yes.
19          THE COURT:  And do I understand as well you have in
20   front of you now a written listing of the elements?  Also
21   correct, sir?
22          THE DEFENDANT:  Yes.
23          THE COURT:  And do you understand that if you were to
24   proceed to trial, that is what the government would have to
25   prove at trial?
```

MasWbarP

1          THE DEFENDANT:  Yes.

2          THE COURT:  Do you understand that, sir?

3          THE DEFENDANT:  Yes.

4          THE COURT:  Thank you.

5          Mr. Barreto, I'm going to talk about something a

6    little bit different now.  I'm going to talk about the

7    penalties that are associated with each of these offenses, and

8    I'm going to begin by talking about the maximum penalties.  And

9    when I use that term, what I mean is the most that the law

10   permits me to impose.  I want to be clear, Mr. Barreto, so I

11   want to make sure you're listening to me as I say this.  Just

12   because I'm discussing the maximum penalties doesn't mean these

13   are what you're necessarily going to receive.  I just need to

14   be sure that you understand that by entering a plea of guilty,

15   you're exposing yourself to the possibility of receiving any

16   combination of punishments up to the statutory maximum terms

17   that I'm about to describe.

18          Do you understand that, sir?

19          THE DEFENDANT:  Yes.

20          THE COURT:  May I proceed.

21          THE DEFENDANT:  Yes.

22          THE COURT:  I'm going to begin with restrictions,

23   possible restrictions on your liberty.

24          The maximum possible penalty for each count, of each

25   of Counts One, Two, and Four is life imprisonment, and the

MasWbarP

1    maximum term of imprisonment for Counts Three, Five, and Six is
2    20 years' imprisonment.
3                Do you understand that, sir?
4                (Defendant conferred with counsel)
5                THE DEFENDANT:  Yes.
6                THE COURT:  I find it strange to add them all up, that
7    the aggregate maximum is life, basically.
8                You understand that, sir; yes?
9                THE DEFENDANT:  Yes.
10               THE COURT:  Now, any term of imprisonment that I
11   impose could be followed by a term of supervised release.
12               For Counts One, Two, and Four, the maximum term of
13   supervised release is five years.  For Counts Three, Five, and
14   Six, the maximum term of supervised release that I may impose
15   is three years.
16               Do you understand that, sir?
17               THE DEFENDANT:  Yes.
18               THE COURT:  Now, because terms of supervised release
19   run together -- they call that concurrently -- the maximum term
20   of supervised release that I could impose is five years.
21               Do you understand that, sir?
22               THE DEFENDANT:  Yes.
23               THE COURT:  I'm going to talk to you for a moment
24   about supervised release, because I'd like to be sure that you
25   and I have the same understanding of the term.

MasWbarP

1          When I use the term "supervised release," what I mean

2   is a period of time where you would be subject to supervision

3   by the United States Probation Office.  There will be terms and

4   conditions of supervised release that you would have to follow.

5   If you were unable or unwilling to follow those terms and

6   conditions of supervised release, the possibility exists that

7   your term of supervised release could be revoked.  You could be

8   sent to prison to serve additional jail time.  That would be

9   without a jury trial.  If I revoked your term of supervised

10  release and imposed additional jail time, you would not get any

11  credit for any prior term of imprisonment that you had served.

12  You would also not get any credit for that time that you were

13  on supervised release in compliance with its terms.

14          Do you understand all of those things, sir?

15          THE DEFENDANT:  Yes.

16          THE COURT:  In addition, I want you to understand that

17  there is no parole in the federal system.  If you were

18  sentenced to a term of imprisonment, you would not be released

19  early on parole.  There is an opportunity to earn credit for

20  good behavior, and I believe with the passage of the FIRST STEP

21  Act there are also some additional ways of getting credit

22  against your sentence.  As a general matter, you should expect

23  to serve at least approximately 85 percent of any term of

24  imprisonment imposed.

25          Do you understand that, sir?

MasWbarP

1          THE DEFENDANT:  Yes.

2          THE COURT:  Do you want to take a moment to speak with

3    your attorney about credits against your sentence?  Please do

4    and tell me when you are ready.

5          Ms. Werner, may we proceed.

6          MS. WERNER:  Yes.  Thank you, your Honor.

7          THE COURT:  Thank you.

8          Mr. Barreto, have you had a sufficient opportunity to

9    speak with your attorney?

10         THE DEFENDANT:  Yes.

11         THE COURT:  Thank you.

12         Sir, in addition to restrictions on your liberty, the

13   charges to which you're proposing to plead guilty contain

14   certain financial penalties.

15         The maximum penalty for each of these offenses is

16   $250,000.  I can order restitution to any person or entity that

17   has been injured as a result of your conduct.  I can order you

18   to forfeit any proceeds that you may have derived from these

19   offenses or any property that you may have used to commit or to

20   facilitate the commission of these offenses.

21         In addition, I must order a mandatory special

22   assessment of $100 per count of conviction plus an additional

23   assessment of $5,000.

24         Mr. Bhatia, is that $5,000 assessment for each charge?

25         MR. BHATIA:  It is for each charge, your Honor.

MasWbarP

1          THE COURT:  OK.  So there is basically a $5,100

2    collection of special assessments.

3          MR. BHATIA:  That's right.

4          THE COURT:  All right.  Thank you.

5          So to be clear, Mr. Barreto, for each charge, there is

6    the traditional $100 mandatory special assessment, and then

7    because of the nature of these offenses, there is for each of

8    them as well an additional assessment of $5,000.

9          Are you aware, sir, that these financial penalties are

10   the maximum possible financial penalties that I may impose?

11         (Defendant conferred with counsel)

12         MS. WERNER:  Thank you, your Honor.

13         THE COURT:  Ms. Werner, may we proceed.

14         MS. WERNER:  Yes, your Honor.

15         THE COURT:  Mr. Barreto, have you had a sufficient

16   opportunity to discuss the financial penalties that are

17   associated with these offenses?

18         THE DEFENDANT:  Yes.

19         THE COURT:  And do you understand, sir, that taken

20   together, these restrictions on your liberty that I discussed a

21   few moments ago and the financial penalties that I've just

22   discussed with you are the maximum possible financial penalties

23   that are associated with your offense?

24         THE DEFENDANT:  Yes.

25         THE COURT:  Mr. Barreto, have you heard of the term

MasWbarP

1    "mandatory minimum"?

2             THE DEFENDANT:  Yes.  Yes.

3             THE COURT:  When I use that term, what it means is

4    that except in very rare circumstances that I don't believe

5    apply here, I can't go below the mandatory minimum term of

6    imprisonment that has been set forth by Congress.

7             Is that your understanding of the term as well, sir?

8             THE DEFENDANT:  Yes.

9             THE COURT:  And do you understand that in this case

10   there is a mandatory minimum term of imprisonment for each

11   count of -- excuse me, for Counts One, Two, and Four of ten

12   years and for Counts Three, Five, and Six of five years?

13            Are you aware of that, sir?

14            THE DEFENDANT:  Yes.

15            THE COURT:  Mr. Barreto, I'm going to now ask you some

16   different questions, and I want to begin them by saying that

17   not all of these questions apply to all people, but I have to

18   ask them nonetheless.  So please don't be surprised if I'm

19   asking you a question and it doesn't apply to you.  I just have

20   to ask it.

21            May I proceed, sir?

22            THE DEFENDANT:  Yes.

23            THE COURT:  Mr. Barreto, are you a United States

24   citizen?

25            THE DEFENDANT:  Yes.

MasWbarP

1          THE COURT:  Were you born here, sir, or were you

2    naturalized?

3          THE DEFENDANT:  I was born here.

4          THE COURT:  I ask, sir, because some people who appear

5    before me are not U.S. citizens, and a guilty plea can have

6    adverse immigration consequences.  Since you are a United

7    States citizen, I'm going to ask you a different set of

8    questions, and that question in particular is this.

9          Do you understand that as a result of this guilty

10   plea, you could lose certain valuable civil rights, including

11   the right to vote, the right to hold public office, the right

12   to serve on a jury, and the right to possess a firearm?  And

13   you could lose these rights, to the extent you have them today

14   or to the extent that you might otherwise be able to obtain

15   them in the future.

16         Are you aware of that?

17         THE DEFENDANT:  Yes.

18         THE COURT:  Well, let me ask a different set of

19   questions, sir.  At this time are you serving any other

20   sentences?  I suspect the answer is no.  Am I correct there's

21   no other, you have no other open criminal cases or resolved

22   criminal cases at this time?

23         THE DEFENDANT:  No, no.

24         THE COURT:  That's fine.  Sometimes people appear

25   before me with multiple cases, and I ask so that they

MasWbarP

1    understand that resolving the case before me doesn't

2    necessarily resolve any case they may have before some other

3    judge.

4            Let me ask you a different set of questions, sir.

5            Do you understand that as a result of your guilty plea

6    in this case, you may be required to register as a sex offender

7    under the Sex Offender Registration and Notification Act?

8            THE DEFENDANT:  Yes.

9            THE COURT:  Do you also understand that as a result of

10   your guilty plea to these offenses, you may face the

11   possibility of civil commitment under the Adam Walsh Child

12   Protection and Safety Act following the completion of any term

13   of imprisonment?  That act permits the attorney general or the

14   director of the Bureau of Prisons to certify that a prisoner

15   approaching the end of his period of incarceration is a

16   sexually dangerous person.  If at a hearing before a court the

17   government were to demonstrate by clear and convincing evidence

18   that you were sexually dangerous, as the term is defined in the

19   statute, you might be committed to further custody until a

20   court were to determine that you were no longer sexually

21   dangerous.

22           Are you aware of that, sir?

23           THE DEFENDANT:  Yes.

24           THE COURT:  Without giving me the specifics of your

25   communications, have your attorneys explained to you the

MasWbarP

```
1    process of sentencing?
2                THE DEFENDANT:  Yes.
3                THE COURT:  Why don't we -- let me talk about it a
4    little bit, and then you can talk with Ms. Werner if you want
5    to clear up anything.
6                If I accept your guilty plea in this case, the next
7    phase would be sentencing.  The probation office would want to
8    interview you in preparing the presentence investigation
9    report, and then it would issue the report.  And then, your
10   attorneys and the attorneys for the government would submit
11   statements to me in connection with sentencing, and there would
12   be a proceeding, and I would hear from you and I'd read the
13   written statements and I'd hear from you orally.  And then I
14   would impose sentence by considering certain factors that are
15   set forth in a statute.  You might have heard them called
16   3553(a) factors, or sentencing factors.  So that's, generally
17   speaking, the process of sentencing.
18               Do you understand that, sir?
19               (Defendant conferred with counsel)
20               THE COURT:  I'll have you talk to Ms. Werner, and
21   you'll tell me when you're ready.
22               MS. WERNER:  Thank you, your Honor.  We're prepared to
23   proceed.
24               THE COURT:  Thank you.
25               Mr. Barreto have you had a sufficient opportunity now
```

MasWbarP

1     to discuss or to refresh your recollection about the process of

2     sentencing in this case?

3                THE DEFENDANT:  Yes.  Now, yes.

4                THE COURT:  Mr. Barreto, one of the things that I must

5     consider at sentencing is a document known as the United States

6     Sentencing Guidelines.  Sometimes people call that the

7     sentencing guidelines or the guidelines.

8                Have you heard any of those terms in the past?

9                THE DEFENDANT:  Yeah, I heard it.  Yes.

10               THE COURT:  You've heard it, so if I use the term

11    "guidelines" or "sentencing guidelines," that's what I'm

12    referring to, sir.

13               Do you understand that, sir?

14               THE DEFENDANT:  Yes.

15               THE COURT:  Mr. Barreto, if anyone has attempted to

16    predict for you what your ultimate sentence will be, their

17    prediction could be incorrect.  I will be the judge sentencing

18    you.  I need to hear from you today.  I need to hear from the

19    probation office in the future, and I need to hear from you,

20    your attorneys and the government at sentencing.

21               Do you understand that today no one can predict with

22    any confidence what your ultimate sentence will be?

23               THE DEFENDANT:  Yes.

24               THE COURT:  And do you understand that if your

25    ultimate sentence is different from what anyone may have

MasWbarP

1    suggested, if it is different from what you expect or hoped

2    for, if it is different from any range contained in any

3    agreement that you may have with the government, you would

4    still be bound by your guilty plea?  You would not be permitted

5    to withdraw your guilty plea based merely on dissatisfaction

6    with your sentence.

7              Are you aware of that, sir?

8              THE DEFENDANT:  Yes.

9              THE COURT:  It is my understanding, Mr. Barreto, that

10   you are pleading guilty today pursuant to a written plea

11   agreement with the government.  Am I correct?

12             THE DEFENDANT:  Yes.

13             THE COURT:  I've been given a document, and I think

14   you have a copy of it in front of you.  It is a letter dated

15   October 25 of 2022, from the United States Attorney's Office

16   for the Southern District of New York to Ms. Werner, Mr. Flood,

17   and Mr. Kelly from the Federal Defenders.  It mentions this

18   case and the docket of this case.

19             Do you have -- is that in fact the document you have

20   in front of you, sir?

21             THE DEFENDANT:  Yes.

22             THE COURT:  Is this your written plea agreement with

23   the government?

24             THE DEFENDANT:  Yes.

25             THE COURT:  The document that I have, sir, is 13 pages

MasWbarP

1    long.  Is your last page page 13?

2              THE DEFENDANT:  Yes.

3              THE COURT:  I'm going to hold up a copy of my

4    document.  I'll just ask you, on the version that I have there

5    are four signatures.  Do you agree with me?  Can you just look

6    up here for a moment, please, sir?

7              Can you see four signatures on the page that I'm

8    holding up?

9              THE DEFENDANT:  Yes.

10             THE COURT:  Do you have a comparable page 13 in front

11   of you, sir?

12             THE DEFENDANT:  Yes.

13             THE COURT:  Do you have four signatures on the page 13

14   in front of you, sir?

15             THE DEFENDANT:  Yes.

16             THE COURT:  Is one of those signatures yours?

17             THE DEFENDANT:  Yes.

18             THE COURT:  Did you sign this document today, sir?

19             THE DEFENDANT:  Yes.

20             THE COURT:  Did you sign this document in the presence

21   of your attorneys?

22             THE DEFENDANT:  Yes.

23             THE COURT:  Did you sign this document after reading

24   it, after reading this plea agreement?

25             THE DEFENDANT:  Yes.

MasWbarP

```
1          THE COURT:  I didn't mean to confuse you.  What I'd
2   like to know is that at some point, at any point before you
3   signed this document, did you read it?
4          THE DEFENDANT:  Yes, I read it.  Yes.
5          THE COURT:  And did you speak about it with your
6   attorneys?
7          THE DEFENDANT:  Yes.
8          THE COURT:  And so at the time that you signed it, did
9   you understand what this document provided?
10          THE DEFENDANT:  Yes.
11          THE COURT:  I'm marking my copy of the document as
12   Court Exhibit 2.  At the end of this proceeding, I'm going to
13   give this document to the government for safekeeping.
14          There are a few things that I'd like to talk about
15   with you in the document, so I'm going to turn, first, to page
16   2.  Could you please turn to page 2 of this document and tell
17   me when you've gotten there, sir.
18          THE DEFENDANT:  Uh-huh.
19          THE COURT:  Are you there?
20          THE DEFENDANT:  Yes, I'm there.
21          THE COURT:  Thank you.
22          At the bottom of page 2, there is a paragraph that
23   begins, "the defendant hereby admits."  And my understanding is
24   that you are admitting to the forfeiture allegations that are
25   associated with certain counts of the information.  Am I
```

MasWbarP

1      correct, sir?

2              THE DEFENDANT:  Yes.

3              THE COURT:  So I'm going to ask a very technical

4      question.  Do you admit to the forfeiture allegations in this

5      case?

6              THE DEFENDANT:  Yes.

7              THE COURT:  I'll ask you, please, to turn to page 3

8      and tell me when you've gotten to page 3.

9              THE DEFENDANT:  I'm there.

10             THE COURT:  Thank you.

11             I understand in the first paragraph of page three, the

12     first full paragraph, that you are agreeing to make restitution

13     in an amount that I will order pursuant to certain statutes,

14     and that you're also agreeing that I may consider certain

15     impact statements, victim impact statements.

16             Are you, in fact, making those agreements, sir?

17             THE DEFENDANT:  Yes.

18             THE COURT:  Now, on the remainder of page 3, and then

19     it carries over to page 4 and page 5 and page 6 and page 7 and

20     page 8, on to the top of page 9, what I understand is happening

21     between pages 3 and 9 is that you and the government are

22     stipulating -- you're agreeing -- that the United States

23     Sentencing Guidelines apply to your case in a particular way.

24     Is that your understanding as well?

25             THE DEFENDANT:  Yes.

MasWbarP

1          THE COURT:  Mr. Barreto, these stipulations, these

2     agreements that you have, they bind you and your attorneys.

3     They bind the government.  They don't bind me because I'm not a

4     signatory to this agreement.  I have an independent obligation

5     to calculate the guidelines.  This is not to say, sir, that I'm

6     going to come up with a different guidelines range, but what I

7     want to be sure you understand is that I do have that

8     independent obligation to calculate the guidelines.

9          Do you understand that, sir?

10          THE DEFENDANT:  Yes.

11          THE COURT:  Do you also understand that if I correctly

12     calculate the guidelines but come up with a different range

13     than the range you and the government have stipulated to, that

14     would not be a basis for you to withdraw your guilty plea?

15          Do you understand that?

16          THE DEFENDANT:  Yes.

17          THE COURT:  My understanding is that you and the

18     government have stipulated that the relevant -- or that the

19     guidelines sentence here is life imprisonment with a mandatory

20     minimum of 121 months' imprisonment.  Is that correct, sir?

21          THE DEFENDANT:  Yes.

22          THE COURT:  Could I ask you, please, to turn to page

23     10 and to tell me, please, when you're at page 10.

24          THE DEFENDANT:  I'm in page 10.

25          THE COURT:  Thank you.

MasWbarP

1          I'm looking at the third full paragraph on page 10,

2     and it begins with the words "It is agreed."  Do you see that

3     paragraph, sir?

4          THE DEFENDANT:  Yes.

5          THE COURT:  I understand in this paragraph you and the

6     government are each agreeing to waive -- or give up -- certain

7     rights that you have if certain things happen at sentencing.

8     Is that your understanding as well?

9          THE DEFENDANT:  Yes.

10          THE COURT:  In particular, Mr. Barreto, I understand

11     that you are agreeing to give up your right to appeal or to

12     file a collateral attack under Sections 2255 or 2241 of Title

13     28.  So you're giving up your right to appeal or to

14     collaterally challenge pieces of your sentence if certain

15     things happen at sentencing.

16          Again, is that your understanding as well?

17          THE DEFENDANT:  Yes.

18          THE COURT:  Let me put some specifics here.

19          First, I understand that you are agreeing not to

20     appeal or to collaterally challenge any sentence at or below

21     the stipulated guidelines sentence of life imprisonment.  And

22     so if I were to impose a term of life imprisonment or something

23     less than that, you would not appeal or collaterally challenge

24     that piece of your sentence.  Is that correct?

25          THE DEFENDANT:  Yes.

MasWbarP

1          THE COURT:  I understand as well that you're agreeing

2     not to appeal or to collaterally challenge any term of

3     supervised release that is less than or equal to the statutory

4     maximum of five years.  And so if I were to impose a term of

5     five years of supervised release or something less than that,

6     you're agreeing not to appeal that piece of your sentence.  Is

7     that correct?

8          THE DEFENDANT:  Yes.

9          THE COURT:  I also understand that you are agreeing

10    not to appeal or bring a collateral challenge to any fine that

11    is less than or equal to $500,000.  Is that correct?

12         THE DEFENDANT:  Yes.

13         THE COURT:  All right.  Now, I see here there's a

14    special assessment that's listed as $700, which I believe is

15    incorrect, because we just did the math a little bit earlier.

16         But Mr. Bhatia, would you please consult with defense

17    counsel and tell me if that is the number I should be

18    allocuting Mr. Barreto on or if there's a different number.

19         MR. BHATIA:  Your Honor, I conferred with defense

20    counsel.  It should be 600 because that's the special

21    assessment.  The other parts of it, the $5,000 for each count,

22    are an additional assessment.  But the special assessment

23    should say less than or equal to 600.  So if it's acceptable to

24    your Honor, the parties could make a manual edit to that and

25    initial it on the official copy.

MasWbarP

1          THE COURT:  I've made the edit and initialed it on my

2    copy.

3          Mr. Barreto, there is a little bit of confusion.  The

4    number on the special assessment figure should be $600 and not

5    $700.  Your attorney is reviewing that with you now.

6          Do you understand that, sir?

7          THE DEFENDANT:  Yes.

8          THE COURT:  OK.  And so, sir, if I were to impose a

9    mandatory special assessment of $600, you would not be

10   permitted to appeal or to collaterally challenge that piece of

11   your sentence.

12         Do you understand, sir?

13         THE DEFENDANT:  Yeah, yes.

14         THE COURT:  OK.  Mr. Bhatia, are there additional

15   provisions that you would like me to address?  I can address

16   the SORNA provision if you'd like, although I believe I have

17   already done that earlier in this proceeding.  It's up to you.

18   Those are the only -- that's the only other thing I think would

19   need to be reviewed.

20         MR. BHATIA:  That's right, your Honor.  I think to

21   just reiterate that the defendant understands and acknowledges,

22   basically the first sentence of that SORNA passage, that the

23   defendant is acknowledging and understanding.

24         THE COURT:  Thank you.

25         Mr. Barreto, on page 11, there is a paragraph -- the

MasWbarP

1    second full paragraph begins with the words "the defendant

2    understands."

3               Do you see that paragraph, sir, on page 11?  Your

4    attorney is pointing it out to you now.

5               THE DEFENDANT:  Oh, yes.

6               THE COURT:  We've talked about this earlier, but I

7    understand that in this paragraph you are acknowledging that

8    under the Sex Offender Registration and Notification Act, you

9    must register and keep the registration current in each of the

10   following jurisdictions: where you reside, where you are

11   employed, and where you are a student.

12              Do you understand that obligation, sir?

13              THE DEFENDANT:  Yes.

14              THE COURT:  Mr. Barreto, does this document that you

15   and I have been talking about constitute your understanding of

16   the entire agreement that you have with the government?

17              THE DEFENDANT:  I don't --

18              THE COURT:  Let me ask the question a little bit

19   differently.  We've been talking about this plea agreement, and

20   there are certain understandings that are listed in here that

21   you have with the government and that the government has with

22   you.  Am I correct?

23              THE DEFENDANT:  Yes.

24              THE COURT:  OK.  Other than what is in this document,

25   has anyone made you any promise or offered you any inducement

MasWbarP

1    in order to get you to sign this agreement or to plead guilty
2    here today?
3             THE DEFENDANT:  No.  No one has.
4             THE COURT:  So other than what's in -- is there any
5    agreement that you have with the government that's not in this
6    document?  And that's not a trick question.  I just want to
7    make sure there's nothing else out there.
8             THE DEFENDANT:  No.  This.  No.
9             THE COURT:  It's all in this --
10            THE DEFENDANT:  Yes, yes, yes.
11            THE COURT:  That is my understanding as well.  Thank
12   you four confirming that.
13            Sir, has anyone forced you or threatened you to sign
14   this agreement or to plead guilty here today?
15            THE DEFENDANT:  No, no.
16            THE COURT:  Has anyone made you a promise as to what
17   your ultimate sentence will be?
18            THE DEFENDANT:  No.
19            THE COURT:  Could you please tell me in your own words
20   what it is you did that makes you believe you are guilty of the
21   crimes that are set forth in the second superseding
22   information.  And let me begin by asking, sir, do you have
23   notes to help you in speaking with me today?
24            THE DEFENDANT:  Yes.
25            THE COURT:  That's very common.  All I want to be sure

MasWbarP

| | |
|---|---|
| 1 | of is that the ideas in those notes are yours.  Is that |
| 2 | correct?  No one's forcing you to say anything, correct, sir? |
| 3 | THE DEFENDANT:  No one's forcing me. |
| 4 | THE COURT:  No one's forcing you. |
| 5 | I'll ask you to speak with your attorney and then when |
| 6 | you're ready, please speak to me.  Mr. Barreto, what I'll also |
| 7 | ask, just because I've already told you about the acoustics in |
| 8 | this courtroom, is that you speak louder and slower than you |
| 9 | think you need to.  So speak with your attorneys and then come |
| 10 | back to me when you're ready. |
| 11 | Thank you. |
| 12 | MS. WERNER:  Your Honor, one question for the Court. |
| 13 | I think it might be simplest if the Court inquires count by |
| 14 | count, inviting his allocution for each specific count, because |
| 15 | otherwise it's a lot to tackle in one go, if the Court wouldn't |
| 16 | mind. |
| 17 | THE COURT:  Well, are you asking -- OK. |
| 18 | MS. WERNER:  Or perhaps, if the Court would allow it, |
| 19 | I could prompt him. |
| 20 | THE COURT:  Yeah.  No.  That's fine.  I guess my |
| 21 | confusion is that there are three counts with the same elements |
| 22 | and there are three other counts with different elements, and |
| 23 | they are not necessarily in sequence.  If you're asking me to |
| 24 | inquire of him count by count, I'll do that. |
| 25 | MS. WERNER:  I think that would be simplest, your |

MasWbarP

1   Honor.

2              THE COURT:  All right.

3              Mr. Barreto, I'm going to begin with Count One, sir,

4   and Count One suggests -- charges you with committing conduct

5   during a particular period of time.  The period of time is

6   between November of 2017 and July of 2019.  And during that

7   time, it says that you used a facility of interstate commerce,

8   in particular, electronic communications, perhaps with a phone.

9   Is that correct?

10             First of all, let's start with that.  Is that correct?

11             THE DEFENDANT:  Yes.

12             THE COURT:  And in those communications, did you

13  persuade or induce or entice or coerce a victim to engage in

14  sexual activity?

15             MS. WERNER:  Your Honor, I'm sorry to interject.

16             Mr. Barreto does have a statement in his own words

17  that I believe would satisfy the elements.  I simply meant if

18  he could just take it count by count, so if he could share his

19  allocution for Count One and then Count Two rather than --

20             THE COURT:  Thank you.

21             MS. WERNER:  -- sharing it all in one go.

22             THE COURT:  That's absolutely fine.  Excuse me.  I

23  misunderstood your request.  Absolutely.

24             So let's then, Mr. Barreto, let's please begin with

25  Count One.

MasWbarP

1      THE DEFENDANT:  In 2017 and 2019, in the Bronx, I used

2  a cell phone to message with someone who told me they was

3  younger than 18 years old in order to engage in a sexual

4  activity with him.

5      THE COURT:  And sir, at the time that you engaged in

6  this conduct, did you understand that it was wrong and illegal?

7      THE DEFENDANT:  Yes.

8      THE COURT:  All right.  One moment, please.

9      Mr. Bhatia, assuming that the allocutions are at that

10  level of specificity or generality, are there additional

11  questions that you would want me to ask in follow-up, or may we

12  proceed?

13      MR. BHATIA:  No, your Honor.  That level is fine, and

14  we've prepared a proffer about what the government's evidence

15  would show as to each of these counts too that, just to avoid

16  ambiguity, I'd like to do later on.  We can do it either as we

17  go count by count or at the end.

18      THE COURT:  At the end, please.

19      MR. BHATIA:  That level of generality is fine with us

20  as long as it hits the elements.

21      THE COURT:  Thank you.

22      Mr. Barreto, let's please proceed to Count Two, sir.

23      THE DEFENDANT:  In 2018 -- 2008 --

24      THE COURT:  I'm sorry.  In 2008, sir?

25      THE DEFENDANT:  2008.

MasWbarP

```
 1              THE COURT:  Thank you.  Go ahead.

 2              THE DEFENDANT:  In the Bronx, I used MySpace to

 3    message someone who I was -- who I knew was younger than 18

 4    years old in order to engage in a sexual activity with him.

 5              THE COURT:  And again, sir, at that time did you

 6    understand that what you were doing was wrong and illegal?

 7              THE DEFENDANT:  Yes.  Yes.

 8              THE COURT:  All right.  If you could turn now, please,

 9    to Count Three, sir.

10              THE DEFENDANT:  In 2019, in the Bronx, I used Facebook

11    to chat with someone who told me he was younger than 18 years

12    old.  We exchanged sexual messages.  He sent me sexual

13    pictures.  And I watched him do sexual things on a livestream.

14              THE COURT:  And sir, as I've asked before, at the time

15    you were engaged in this conduct, did you understand that it

16    was wrong and illegal?

17              THE DEFENDANT:  Yes.

18              THE COURT:  Count Four, please, sir.

19              THE DEFENDANT:  In 2018 or in 2019, in the Bronx, I

20    used Facebook to message someone who told me he was younger

21    than 18 years old.  I asked him to come to my house to engage

22    in sexual activity.

23              THE COURT:  And at that time, sir, did you understand

24    that what you were doing was wrong and illegal?

25              THE DEFENDANT:  Yes.
```

MasWbarP

1           THE COURT:  Please turn to Count Five.

2           THE DEFENDANT:  In 2018 or 2019, in the Bronx, I used

3    Facebook to message someone who told me he was younger than 18

4    years old.  I asked him to send me sexual photos of himself,

5    and he did.

6           THE COURT:  And at that time, sir, did you understand

7    that this conduct was wrong and illegal?

8           THE DEFENDANT:  Yes.

9           THE COURT:  And Count Six, please, sir.

10          THE DEFENDANT:  In 2018, in the Bronx, I used Facebook

11   to message someone who told me he was younger than 18 years

12   old.  I asked him to send me photographics.

13          (Counsel conferred with defendant)

14          THE DEFENDANT:  Phonographics, photos of him, and he

15   did.  And I'm very, very sorry for my actions.

16          THE COURT:  I understand, Mr. Barreto.

17          And with this count as well, did you understand that

18   this conduct at the time you were engaged in it was wrong and

19   illegal?

20          THE DEFENDANT:  Yes, definitely.

21          THE COURT:  OK.

22          Ms. Werner, do you know of any valid defense that

23   would prevail at trial or any other reason why your client

24   should not be permitted to plead guilty to these offenses?

25          MS. WERNER:  No, your Honor.

MasWbarP

1   THE COURT:  Mr. Barreto, I'm going to ask you to pay

2   special attention to the prosecutor right now.  He's going to

3   outline for both of us a proffer of what the government's

4   evidence would be if this case were to proceed to trial.  All

5   right, sir?

6   THE DEFENDANT:  OK.  I mean yes.

7   THE COURT:  Yes.  OK.

8   Mr. Bhatia, thank you.

9   MR. BHATIA:  Your Honor, as to Count One, at trial,

10  the government's evidence would show that in or about November

11  2017, victim one, who was 13 years old at the time, met with

12  the defendant at a local store.  Victim one initially told

13  Barreto that he was 15.  Mr. Barreto initially told the victim

14  he was 17, but he later acknowledged that he was 27.  Between

15  three weeks and a month after the meeting, Mr. Barreto and the

16  victim began communicating via Facebook Messenger.  Records

17  from Facebook show that they communicated frequently from 2017

18  to 2019.  In or about July 2019, the victim went to Barreto's

19  apartment.  There, Mr. Barreto gave him marijuana and alcohol

20  as well, and later, Mr. Barreto recorded a video of victim one

21  and himself engaged in sexual activity.

22  Count Two, in July 2008, Mr. Barreto reached out to

23  victim two on MySpace.  At the time victim two was 14, and

24  Mr. Barreto was 19.  After speaking on MySpace, victim two and

25  the friend took a train to visit Mr. Barreto in the Bronx.

MasWbarP

1    When Mr. Barreto and victim two were alone together in a

2    stairwell in that apartment building, they had sexual activity,

3    and they subsequently began a six-weeklong relationship, which

4    included sex and other physical conduct.  And they also

5    communicated via text message during that relationship.

6           Count Three -- well, let me go to Count Four, your

7    Honor, which is the last enticement count.

8           As to Count Four, late at night on December 9, 2018,

9    Mr. Barreto reached out to victim four via Facebook Messenger.

10   Victim four asked for Mr. Barreto's age, and Mr. Barreto

11   responded 18, about to be 19.  In fact, Mr. Barreto was 30

12   years old.  Victim four told Barreto he was 14, adding:  I got

13   rules in my house.  I'm 14.  My parents are strict.  If you

14   want something with me you got to understand.

15          In December 2018 --

16          THE COURT:  Sir, excuse me.  How old was victim four

17   at the time?  Was he 14 or something else?

18          MR. BHATIA:  I believe victim four at the time was 14.

19   Victim four was under the age of 18.

20          THE COURT:  Thank you, sir.

21          Please continue.

22          MR. BHATIA:  In December 2018, Mr. Barreto and victim

23   four engaged in several sexual communications.  Mr. Barreto and

24   victim four also discussed victim four coming over to Barreto's

25   home.  In or about December 2018, victim four traveled to

MasWbarP

1   Barreto's home in the Bronx, New York, where they had oral sex.

2          I'll go back now to Count Three.

3          In August of 2019, Mr. Barreto reached out to victim

4   three via Facebook Messenger.  Mr. Barreto said he was 17 or 18

5   when, in fact, he was 31.  Victim three said he was 16 when, in

6   fact, he was 15.  Barreto and victim three would go on to

7   communicate via Facebook Messenger regularly in August and

8   September 2019.  Their communications included several sexual

9   messages and also included video messages.  On one or more

10  occasions, victim three showed Barreto his penis during these

11  video sessions, and victim three made these recordings and a

12  photograph in his apartment in the Bronx.

13          As to Count Five, the second count of receipt of child

14  pornography, on November 27, 2018, victim five initiated a

15  Facebook conversation with Barreto.  Later that day,

16  Mr. Barreto said he was 19.  He was, in fact, 30.  Victim five

17  said he was 16.  He was, in fact, 14.  Over the course of

18  several weeks, victim five and Barreto had various

19  conversations about sexual topics.  In or about December 2018,

20  victim five sent a photograph of his penis to Barreto using

21  Facebook Messenger.  And in the same month, when those messages

22  were being sent, Mr. Barreto told other people that he was

23  living in the Bronx at the time.  In fact, that's the same

24  month when he met with victim four in the Bronx.

25          Count Six, on December 23, 2018, Mr. Barreto initiated

MasWbarP

1  a Facebook conversation with victim six.  On December 25, 2018,

2  victim six asked for Barreto's age, and Mr. Barreto responded

3  that he was 17, about to be 18 -- "I really hope that cool."

4  In fact, Mr. Barreto was 30 years old at the time.  Barreto and

5  victim six subsequently had several communications about sexual

6  topics.  Victim six subsequently sent a picture of his penis to

7  Barreto, and victim six took the photograph in his apartment in

8  the Bronx.  And victim six was also under age 18 at the time.

9         THE COURT:  I'm understanding, sir, that if we were to

10  proceed to trial in this case, that would be part but not

11  necessarily all of the government's evidence at that trial.  Is

12  that correct?

13         MR. BHATIA:  That's right, your Honor.  That's just a

14  part of the evidence.

15         THE COURT:  I thank you for the factual proffer.

16         Mr. Barreto, were you able to hear the prosecutor just

17  now?

18         THE DEFENDANT:  Yes.

19         THE COURT:  Sir, if this case were to proceed to

20  trial, those are the allegations that the government would hope

21  to prove at trial.

22         Do you understand that, sir?

23         THE DEFENDANT:  Yes.

24         THE COURT:  Ms. Werner, do you agree that there is a

25  sufficient factual predicate for a guilty plea to Counts One

MasWbarP

1    through Six of the superseding information in this case?

2              MS. WERNER:  I do, your Honor.

3              THE COURT:  If your client wishes to plead guilty, is

4    there any reason why I should not accept his guilty plea?

5              MS. WERNER:  No, your Honor.

6              THE COURT:  Mr. Bhatia, do you agree that there is a

7    sufficient factual predicate for a guilty plea to Counts One

8    through Six?

9              MR. BHATIA:  Yes, your Honor.

10             THE COURT:  If Mr. Barreto wishes to plead guilty, is

11   there any reason why I should not accept his guilty plea?

12             MR. BHATIA:  No, your Honor.

13             THE COURT:  Mr. Barreto, at this time, do you wish to

14   enter a plea of guilty to Counts One through Six of the second

15   superseding information in this case?

16             THE DEFENDANT:  Yes.

17             THE COURT:  Sir, because you have acknowledged that

18   you are, in fact, guilty as charged in each of these counts;

19   because I'm satisfied that you know of your rights, including

20   your right to go to trial; and because I'm satisfied that you

21   are aware of the elements of these offenses and the

22   consequences of your guilty plea, including the penalties that

23   may be imposed, I find that you are knowingly and voluntarily

24   pleading guilty.  I will accept your plea of guilty to Counts

25   One through Six of the second superseding information.

MasWbarP

1          We spoke earlier, Mr. Barreto, about sentencing in

2     this case, and as I mentioned to you, the probation office will

3     want to interview you in connection with the presentence

4     investigation report.  I am ordering, sir, that that interview

5     not take place unless you are accompanied, either virtually or

6     in person, by one of your attorneys or someone from the Federal

7     Defenders.

8          Do you understand that, sir?

9          THE DEFENDANT:  Yes.

10          THE COURT:  Mr. Barreto, please understand that I rely

11     very heavily on the presentence investigation report in

12     determining what is an appropriate sentence.  That report is

13     most useful to me when it is complete and when it is accurate,

14     and therefore, I'm asking you that if you choose to speak to

15     the probation office, that what you say to them be accurate and

16     complete.

17          Do you want to pause, sir?

18          THE DEFENDANT:  I'm -- I'm OK.

19          THE COURT:  Sir, please also understand that you have

20     a right to review the presentence investigation report before I

21     see it.  I invite you to do that in case there is anything that

22     requires correction or objection.

23          Do you understand that, sir?

24          THE DEFENDANT:  Yes.

25          THE COURT:  Mr. Barreto, I'm going to set sentencing

MasWbarP

1    down for February 2 of 2023, at 3 p.m., to give the probation

2    office enough time to prepare its materials.

3              Is that a date and time that works for the government?

4              MR. BHATIA:  Yes, your Honor.

5              THE COURT:  Is that a date and time that works for the

6    defense?

7              MS. WERNER:  Your Honor, I apologize for not bringing

8    this to the Court's attention earlier, but I wonder if the

9    Court might entertain a slightly longer than usual period

10   before we proceed to sentencing in this case due to the

11   mitigation work that we are doing with Mr. Barreto.

12             THE COURT:  I would except that, assuming that the

13   government has no objection to it, which I suspect the

14   government does not.

15             Mr. Bhatia.

16             MR. BHATIA:  No, your Honor.

17             THE COURT:  OK.

18             What is a longer period?  Is there a month in

19   particular that you're thinking about, Ms. Werner?

20             MS. WERNER:  Your Honor, I'm asking for a date about

21   six months out.

22             THE COURT:  All right.

23             MS. WERNER:  Around April, the end of April would be

24   fine.

25             THE COURT:  Ms. Noriega, I'm confident that there's an

MasWbarP

1    April date that we can find.

2              THE DEPUTY CLERK:  April 27 at 3 p.m.

3              THE COURT:  Ms. Werner, given that, my hope is that

4    the parties will not be seeking much in the way of extensions.

5              MS. WERNER:  Yes, your Honor.  That was my hope, to

6    avoid many letters asking for more time.

7              THE COURT:  OK.  Thank you.

8              I would ask for the defense sentencing submission two

9    weeks in advance of sentencing, the government's responsive

10   submission one week in advance of sentencing.

11             Mr. Bhatia, please submit to the probation office in

12   the next week or so a factual statement.

13             Ms. Werner, please reach out in the next two weeks or

14   so to begin the interviewing process with the probation office.

15             Let me just check the rest of my notes.  Excuse me.

16             Mr. Bhatia, is there anything else that you would like

17   to address with me in this proceeding?

18             MR. BHATIA:  Your Honor, I apologize for not raising

19   this earlier, but I wanted to make sure that the defendant had

20   discussed the possibility of immigration consequences in his

21   guilty plea.

22             THE COURT:  He is a U.S. citizen, and he was born

23   here, so we spoke about that, and given his representations to

24   me, I did speak to him about the civil consequences of a guilty

25   plea, but I don't believe there are immigration consequences.

MasWbarP

1          MR. BHATIA:  I must have just missed it.  I apologize.

2     Other than that, nothing else right now.

3          THE COURT:  OK.  Thank you.

4          Ms. Werner, just so that I am clear, if you would like

5     additional allocution regarding your client's citizenship or

6     immigration issues, I'm happy to provide it, but in the absence

7     of that, is it your -- we were planning, we being my chambers,

8     were planning on having the presentence investigation report

9     prepared in the ordinary course.  Are you asking for that to be

10    on a longer schedule to accommodate the mitigation evidence

11    that you're thinking about?

12         MS. WERNER:  I think that would be helpful in this

13    case, your Honor.

14         THE COURT:  All right.  I am still going to ask my

15    deputy to order the report, and I'd ask you to work with the

16    probation office so that they understand that it will be on an

17    extended schedule.  To the extent that we are able to

18    communicate that to them, we will do so, but please explain why

19    it is to them that you'd like it on a longer schedule.

20         MS. WERNER:  Thank you, your Honor.

21         THE COURT:  Mr. Kelly, yes.

22         MR. KELLY:  May I have a moment to confer with Ms.

23    Werner?

24         THE COURT:  Of course, yes.

25         MS. WERNER:  Your Honor, Mr. Kelly is making the good

MasWbarP

1  point that we have on occasion encountered probation officers

2  who feel that there must be an explicit order from the Court

3  excusing them from the standard schedule.

4          THE COURT:  We are advising the probation office that

5  we are ordering it so that it is not forgotten but that it is

6  on an extended schedule because of anticipated mitigation

7  evidence.

8          MS. WERNER:  Thank you, your Honor.

9          THE COURT:  Between the two of us, hopefully that will

10  work.  If not, the probation office knows how to reach me.

11          Mr. Bhatia, I understand from you there is nothing

12  further, and I thank you for that.

13          Ms. Werner and Mr. Kelly, would you please consult

14  with your client and let me know if there's anything else you'd

15  like me to address in this proceeding.

16          (Counsel conferred with defendant)

17          MS. WERNER:  Thank you, your Honor.  Nothing else for

18  today.

19          THE COURT:  OK.  One moment, please.  Thank you.

20          I will be handing back a copy of the plea agreement to

21  the government.  There is also a medical attention form that

22  we'll be giving to the marshals.

23          With that, we are adjourned.  Thank you all very much.

24          (Adjourned)

25